## JOSEPH WORONECKI *v.* WANDA H. TRAPPE
### (14754)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued December 2, 1993—decision released February 22, 1994

*Jon L. Schoenhorn,* with whom, on the brief, was *Susan M. Phillips,* legal intern, for the appellant (defendant).

*Michael H. Agranoff,* with whom, on the brief, was *Fatima T. Lobo,* for the appellee (plaintiff).

NORCOTT, J. This appeal involves the right of a homeowner to recover compensatory damages and attorney's fees from a home improvement contractor pursuant to: (1) the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; for a violation of the registration requirement of General Statutes (Rev. to 1989) § 20-427 (b)[1] of the Home Improvement Act (HIA); General Statutes § 20-418 et seq.; and (2) General Statutes § 49-51,[2] for failure to

---

[1] General Statutes (Rev. to 1989) § 20-427 (b) provides: "No person shall: (1) Present or attempt to present, as his own, the certificate of another, (2) knowingly give false evidence of a material nature to the commissioner for the purpose of procuring a certificate, (3) represent himself falsely as, or impersonate, a registered home improvement contractor or salesman, (4) use or attempt to use a certificate which has expired or which has been suspended or revoked, (5) offer to make or make any home improvement without having a current certificate of registration under this chapter, (6) represent in any manner that his registration constitutes an endorsement of the quality of his workmanship or of his competency by the commissioner, (7) employ or allow any person to act as a salesman on his behalf unless such person is registered as a home improvement salesman, or (8) fail to refund the amount paid for a home improvement within ten days of a written request mailed or delivered to the contractor's last known address, if no substantial portion of the contracted work has been performed at the time of the request and more than thirty days has elapsed since the starting date specified in the written contract. In addition to any other remedy provided for in this chapter, any person who violates any provision of this subsection shall be fined not more than five hundred dollars or imprisoned for not more than one year or be both fined and imprisoned. A violation of any of the provisions of this chapter shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b."

[2] General Statutes § 49-51 provides: "DISCHARGE OF INVALID LIEN. (a) Any person having an interest in any real or personal property described in any certificate of lien, which lien is invalid but not discharged of record, may give written notice to the lienor sent to him at his last-known address by registered mail or by certified mail, postage prepaid, return receipt requested, to discharge the lien. Upon receipt of such notice, the lienor shall discharge the lien by sending a release sufficient under section 52-380d, by first class mail, postage prepaid, to the person requesting the discharge. If the lien is not discharged within thirty days of the notice, that person

discharge an invalid mechanic's lien. The plaintiff, Joseph Woronecki, doing business as J & J Excavating Company, initiated an action to foreclose a mechanic's lien against the defendant, Wanda H. Trappe, who filed an answer claiming, inter alia, that the lien was invalid because the plaintiff had violated the HIA.[3] The defendant also filed a counterclaim alleging, inter alia, that the plaintiff's conduct constituted an unfair trade practice under CUTPA and that the mechanic's lien was invalid and should be discharged pursuant to § 49-51.[4] The trial court ruled in favor of the defendant on the complaint and in favor of the

---

may apply to the superior court for such a discharge, and the court may adjudge the validity or invalidity of the lien and may award the plaintiff damages for the failure of the defendant to make discharge upon request. If the court is of the opinion that such certificate of lien was filed without just cause, it may allow, in its discretion, damages to any person aggrieved by such failure to discharge, at the rate of one hundred dollars for each week after the expiration of such thirty days, but not exceeding in the whole the sum of five thousand dollars or an amount equal to the loss sustained by such aggrieved person as a result of such failure to discharge the lien, which loss shall include, but not be limited to, a reasonable attorney's fee, whichever is greater.

"(b) When a lien on real property is adjudged invalid or is otherwise discharged by the court, a certified copy of the judgment of invalidity or discharge recorded on the land records of the town where the certificate of lien was filed fully discharges the lien. If such a discharged or invalid lien is a lien filed on personal property pursuant to section 52-355a, a release of lien in the form prescribed by subsection (c) of section 52-380d, certified to by a clerk of the superior court, with reference to and the date of the court order of discharge or invalidity, fully discharges the lien on filing with the secretary of the state."

[3] The defendant also filed four other special defenses, not at issue in this appeal, denying liability on the grounds that: (1) all payments due the plaintiff had been satisfied in full; (2) no valid contract had ever existed between the parties; (3) the plaintiff had "performed his services in an unsatisfactory and unworkmanlike manner, and failed to fulfill the terms of the 'agreement' "; and (4) the plaintiff's demands constituted "fraud, unfair and deceptive trade practice and unjust enrichment."

[4] The counterclaim also included claims for damages for breach of contract, negligence and breach of warranty. These claims are not involved in this appeal.

plaintiff on the counterclaim. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court on the counterclaim and remand for further proceedings.

The relevant facts are as follows. The defendant owned a thirty-five acre tract of residential property located in Somers, on which were located two houses, a pasture and a horse barn. In April, 1990, the parties entered into an oral agreement whereby the plaintiff was to grade a portion of the defendant's property, clear brush from the pasture and spread a pile of horse manure. The plaintiff commenced the work on April 19, 1990. A number of disputes arose concerning the scope of the job, the price of the job and alleged damage to the defendant's property. After working for three days, the plaintiff left the property without having completed the projects and never returned. Subsequently, the plaintiff sent a bill to the defendant in the amount of $2300 for the work that he had completed. At the bottom of the bill the plaintiff had typed: "1½% Interest will be charged per month on unpaid balance." After receiving only $205 from the defendant,[5] the plaintiff filed a mechanic's lien against the defendant's property.

The plaintiff initiated the present action to foreclose the mechanic's lien and recover the balance allegedly due under the oral agreement. The defendant denied liability on the ground that the plaintiff's failure to comply with the registration requirement of the HIA invalidated the lien and thereby precluded any recovery. In

---

[5] The defendant remitted the $205 with a note stating that it was her understanding that the price upon which they had agreed was $1700. The note further stated that the $205 reflected the difference between the damage allegedly done by the plaintiff to the defendant's property and the agreed price.

addition, the defendant filed a counterclaim alleging that the plaintiff's violation of the HIA entitled her to compensatory damages and attorney's fees under CUTPA. The defendant also sought, by her counterclaim, to have the lien adjudged invalid pursuant to § 49-51 and to collect damages and attorney's fees under that statute.

The trial court concluded that the services that had been performed by the plaintiff fell within the purview of the HIA, and that the plaintiff had not been "registered as a home improvement contractor at the time the work was performed." On the basis of our decision in *Barrett Builders* v. *Miller*, 215 Conn. 316, 576 A.2d 455 (1990), the trial court concluded that the plaintiff could not recover for any home improvement services rendered because he was not registered as required by the HIA. Accordingly, the trial court rendered judgment for the defendant on the complaint and ordered that the mechanic's lien be discharged.

The trial court also rejected each count of the defendant's counterclaim.[6] Notwithstanding its conclusion that the plaintiff had violated the HIA, the trial court held that the defendant had failed to prove a CUTPA violation. The court concluded that the plaintiff's filing of an invalid lien was "not so egregious as to constitute an unfair trade practice" because, before trial, it was not clear "whether the Home Improvement [Act] would apply to landscaping around a horse barn." The court further held that charging interest at 1.5 percent per month on the unpaid balance of the bill was not "such an unethical or unscrupulous act [as] to consti-

---

[6] The trial court concluded that the defendant had failed to carry her burden of proof on her claims that the plaintiff had damaged her property and had not completed the job in a workmanlike manner. Accordingly, the trial court ruled for the plaintiff on the defendant's counterclaim alleging breach of contract, negligence and breach of warranty. These rulings are not at issue in this appeal.

tute a violation" of CUTPA. In addition, the trial court rejected the defendant's application for discharge of the mechanic's lien on the ground that the relief sought had been ordered in the judgment on the complaint.

On appeal, the defendant first argues, and the plaintiff has conceded, that the trial court could not simultaneously have ruled that the plaintiff's actions violated the HIA, but did not result in a violation of CUTPA. The defendant correctly observes that the plain language of § 20-427 (b) and our decision in *A. Secondino & Son, Inc.* v. *LoRicco,* 215 Conn. 336, 576 A.2d 464 (1990), control the disposition of this case. In *A. Secondino & Son, Inc.,* we concluded that the failure to comply with the HIA "is a per se violation of CUTPA by virtue of General Statutes § 20-427 (b), which provides that any violation of the Home Improvement Act is deemed to be an unfair or deceptive trade practice." Id., 343. Because the trial court found that the plaintiff's actions had violated the HIA, it was thus bound to render judgment for the defendant with respect to the CUTPA count of her counterclaim.

The defendant next argues that the trial court improperly rendered judgment for the plaintiff with respect to count five of the defendant's counterclaim in which she applied for the discharge of the mechanic's lien pursuant to § 49-51. The defendant argues that, as a result of the trial court's ruling on the complaint, she had met all of the requirements of § 49-51, and that the trial court, therefore, was compelled to find in her favor on this counterclaim as a matter of law. "Section 49-51 permits any person having an interest in any real estate 'described in any certificate of lien which lien is invalid but not discharged of record' to give notice to the lienor to discharge the lien and, if such request is not complied with in thirty days, to bring his complaint to the court which would have jurisdiction of the foreclosure of such lien, if valid, claiming

such discharge. That court may adjudge the validity or invalidity of the lien, and a certified copy of a judgment of invalidity recorded on the land records shall fully discharge it." *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 375–76, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976). Notwithstanding the trial court's ruling as to the invalidity of the lien, the defendant, as the moving party, had the burden of proving compliance with the statutory notice requirement. *Guilford Yacht Club Assn., Inc.* v. *Northeast Dredging, Inc.*, 192 Conn. 10, 13, 468 A.2d 1235 (1984).

Although the defendant presented evidence that she had sent the proper notice to the plaintiff, the trial court did not make a factual finding to that effect. Instead, the record reveals that the trial court found for the plaintiff on this count because, as it stated in its memorandum of decision, "the relief sought (discharge of the lien) was hereinbefore ordered." In light of this statement, it is clear that the trial court did not consider the merits of this claim. It is axiomatic that the trial court must consider and dispose of all of the issues properly raised that are material to the resolution of the case. *Joyce* v. *Templeton,* 57 Md. App. 101, 106, 468 A.2d 1369 (1984); *Blackstone Valley Gas & Electric Co.* v. *Rhode Island Transmission Co.*, 64 R.I. 204, 230, 12 A.2d 739 (1940). On remand, therefore, the trial court must determine whether the plaintiff met the statutory requirements for relief under § 49-51.

The defendant finally claims that if judgment is rendered for her on her counterclaim, then she is entitled, on remand, to damages and attorney's fees under CUTPA and § 49-51 (a).[7] In response, the plaintiff

---

[7] Both CUTPA and General Statutes § 49-51 provide that damages and attorney's fees may be awarded at the discretion of the court. Under

argues that the issue of attorney's fees was fully litigated and that the trial court did not abuse its discretion when it pronounced: "Counsel fees are not awarded under the circumstances of this case." The plaintiff's argument is untenable, however, because the trial court's statement must be construed in the context of its opinion in its entirety, including its rejection of the defendant's counterclaim. Having determined, mistakenly, that the defendant had not established a violation of CUTPA or of § 49-51, the court never had the occasion to exercise its discretion with regard to the defendant's alleged entitlement to damages or attorney's fees under these statutes.

The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the trial court. *A-G Foods, Inc.,* v. *Pepperidge Farm, Inc.,* 216 Conn. 200, 218, 579 A.2d 69 (1990); *Mather* v. *Griffin Hospital,* 207 Conn. 125, 138, 540 A.2d 666 (1988); *Herb* v. *Kerr,* 190 Conn. 136, 139, 459 A.2d 521 (1983). Furthermore, the awarding of attorney's fees under both CUTPA and § 49-51 (a) is delegated by stat-

CUTPA, damages and attorney's fees are available under General Statutes § 42-110g, which provides in relevant part: "(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

In addition, § 49-51 (a) provides that, in conjunction with the discharge of a lien, "[i]f the court is of the opinion that such certificate of lien was filed without just cause, it may allow, in its discretion, damages to any person aggrieved by such failure to discharge, at the rate of one hundred dollars for each week after the expiration of such thirty days, but not exceeding in the whole the sum of five thousand dollars or an amount equal to the loss sustained by such aggrieved person as a result of such failure to discharge the lien, which loss shall include, but not be limited to, a reasonable attorney's fee, whichever is greater."

ute to the discretion of the trial court. See footnote 7; see also *Gargano* v. *Heyman,* 203 Conn. 616, 622, 525 A.2d 1343 (1987) ("[a]warding punitive damages and attorney's fees under CUTPA is discretionary"). A remand, therefore, is necessary in order to allow the trial court the opportunity properly to exercise its discretion regarding the award of damages and attorney's fees.

The judgment is reversed with respect to the counterclaim and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.