## RICHARD VOTTO *v.* AMERICAN CAR RENTAL, INC.
### (SC 17240)

Sullivan, C. J., and Norcott, Vertefeuille, Zarella and Stengel, Js.

Argued October 26, 2004—officially released May 3, 2005

*Max F. Brunswick*, for the appellant (defendant).

*Bernadette M. Keyes*, for the appellee (plaintiff).

VERTEFEUILLE, J. The defendant, American Car Rental, Inc., doing business as Acme Rent-A-Car, appeals from the trial court's judgment in favor of the plaintiff, Richard Votto, concluding that the motor vehicle rental agreement between the parties constituted a contract of adhesion, and that the defendant's conduct with regard to the rental violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The trial court awarded the plaintiff compensatory and punitive damages, together with attorney's fees and costs. We affirm the judgment of the trial court with regard to the CUTPA violation and the amount of punitive damages awarded under CUTPA, and do not reach the issue of whether the rental agreement was a contract of adhesion.

The trial court found the following facts. In February, 2001, the plaintiff rented a commercial truck from the defendant pursuant to a written rental agreement (agreement) that specified the daily rental fee. The plaintiff also chose to purchase additional coverage that imposed on the defendant the liability for any damage to the truck while it was rented to the plaintiff. This coverage was provided in the "Vehicle Damage Waiver" provision of the agreement. The agreement further provided in relevant part: "Notice: waiver does not cover loss or damage resulting from any violation of paragraphs 1 or 2 of this agreement . . . ." The reverse side of the agreement set forth paragraph two, which listed the prohibited uses of the vehicle, including driving "in or through a structure where there is insufficient clearance, whether of height or width . . . ."

While operating the rented truck, the plaintiff drove under a bridge that could not accommodate the height of the truck, resulting in damage to the vehicle. After reporting the incident to the police, the plaintiff, who

assumed that the damage was covered by the waiver he had purchased, returned the truck to the defendant's place of business. On that same day, the defendant charged the plaintiff's credit card five times in the amounts of $115,[1] $345, $2875, $3450 and $5750, for a total of $12,535. At no time did the defendant advise the plaintiff that it had made these charges. When the plaintiff later learned of these charges, he protested them through his credit card company, which removed all but the $115 charge. The credit card company subsequently reinstated the charges for $345, $2875 and $3450, totaling $6670. The defendant's own estimate of the cost of repairs to the damaged vehicle was $5750.[2] The defendant, however, never explained why it imposed charges in excess of the amount of the estimate.

When the plaintiff sought an explanation for the credit card charges, the manager of the defendant's New Haven office gave the plaintiff a business card that read "Acme Rent-A-Car, 22 Lafayette Place #13, Greenwich, Connecticut 06830, Attn: Legal Dept. No Phone Calls Accepted." The plaintiff later learned that this address was a vacant office more than forty-five miles from New Haven and that the defendant frequently distributed this phony business card to dissatisfied customers in order to defuse confrontations.

The plaintiff subsequently filed this action, alleging that the defendant had engaged in unfair and deceptive acts in violation of CUTPA and that the defendant had failed to honor the damage waiver clause of the agreement. After a court trial, the trial court determined

---

[1] The $115 charge appears to be the cost of the rental and the damage waiver for one day, and that amount is not in dispute.

[2] An estimate in the amount of $5750 was prepared on a document with the letterhead "International Automotive, Inc.," however, at trial it was disclosed that the manager of the defendant's New Haven office had prepared the document.

that the plaintiff was not liable for the repairs to the rental vehicle as the damage was covered by the waiver. The court determined that the agreement provided by the defendant constituted a contract of adhesion and that the defendant's actions constituted unfair and deceptive acts in violation of CUTPA. Specifically, the trial court concluded that the defendant violated CUTPA first by making unauthorized charges to the plaintiff's credit card, and then again with the use of the misleading business card to respond to the plaintiff's complaint about the charges. The trial court awarded the plaintiff compensatory damages in the amount of $6670, punitive damages of $37,260, $12,200 in attorney's fees, and costs of $410.57, for a judgment totaling $56,540.57. The court assessed punitive damages at three times the amount originally charged to the plaintiff's credit card, $12,535, minus $115, which covered the daily rental and waiver charge. The defendant appealed from the trial court's judgment to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the defendant claims that the trial court improperly concluded that the defendant's actions constituted unfair and deceptive acts in violation of CUTPA. The defendant argues that the charges it made to the plaintiff's credit card were not unauthorized because the plaintiff authorized the defendant to charge the plaintiff's credit card for any costs or damage incurred under the agreement. The defendant further argues that although the trial court found that the defendant violated CUTPA by overcharging the plaintiff for vehicle damage and by maintaining an unoccupied and inaccessible legal department in which to resolve complaints, the trial court improperly determined that the defendant's conduct reached the level of malicious, wilful, wanton, or reckless behavior, hence justifying punitive

damages totaling three times the amount charged to the plaintiff's credit card. Thus, even if this court were to affirm the conclusion that the defendant violated CUTPA, the defendant argues that the punitive damages award should be vacated.

The plaintiff maintains that he provided authorization for the defendant to charge only the daily rental fee and the vehicle damage waiver fee to his credit card. The plaintiff further claims that even if the defendant had the right to charge the credit card, the defendant's unscrupulous use of the credit card, by charging more than the estimate for repairing the vehicle damage, amounted to a CUTPA violation. The plaintiff further urges this court to affirm the trial court's award of punitive damages based on the trial court's finding that the defendant acted recklessly by making unauthorized charges to the plaintiff's credit card, overcharging the plaintiff for the cost of the vehicle damage, and maintaining an unoccupied legal department. We agree with the plaintiff.

We begin by setting forth the applicable standard of review. "To the extent that the defendant is challenging the trial court's interpretation of CUTPA, our review is plenary. . . . [W]e review the trial court's factual findings under a clearly erroneous standard. . . . Appellate courts do not examine the record to determine whether the trier of fact could have reached a different conclusion. Instead, we examine the trial court's conclusion in order to determine whether it was legally correct and factually supported." (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 656, 850 A.2d 145 (2004). As to the damages awarded to the plaintiff, "[t]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Elm City*

*Cheese Co.* v. *Federico*, 251 Conn. 59, 90, 752 A.2d 1037 (1999) (applying abuse of discretion standard to punitive damages award).

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the [F]ederal [T]rade [C]ommission for determining when a practice is unfair:[3] (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, supra, 269 Conn. 655–56. Although the trial court did not specify which prong was the basis of its decision, we conclude that the defendant's actions implicate the second prong of the cigarette rule. Thus, "we must consider whether the [defendant's conduct] was 'immoral, unethical, oppressive, or unscrupulous.' Our consideration of this criterion is guided by the factual findings of the trial court." *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 112, 612 A.2d 1130 (1992).

---

[3] We note that we recently have recognized that a question exists as to whether the cigarette rule remains the guiding rule utilized by the Federal Trade Commission. See *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, 273 Conn. 296, 305 n.6, 869 A.2d 1198 (2005). In the present case, however, neither party has raised or briefed this issue or asked us to reconsider our law in this area, and, accordingly, we will wait to consider this question until it has been presented to us for determination. See id.

A trade practice that is undertaken to maximize the defendant's profit at the expense of the plaintiff's rights comes under the second prong of the cigarette rule. See *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, 72 Conn. App. 342, 357, 805 A.2d 735 (defendant general contractor held liable for CUTPA violation under second prong of cigarette rule after listing plaintiff subcontractor as successful bidder but failing to honor contract), cert. denied, 262 Conn. 922, 812 A.2d 864 (2002).

The defendant's use of the plaintiff's signature on a blank credit card slip to charge the plaintiff more than twice the amount of the estimated cost of repair to the vehicle was without question unscrupulous, immoral and oppressive. The trial court found the defendant's unauthorized use of the plaintiff's credit card to be "egregious" and "reprehensible." At trial, the defendant's manager admitted that the defendant did *not* have authority to charge the cost of repair to the credit card and he could not explain the basis for the charges totaling $12,420, later adjusted to $6670, when the repair estimate was $5750.

The defendant's unscrupulous conduct regarding the plaintiff's credit card was matched or exceeded by its woeful response to the plaintiff's complaint. The defendant's only attempt to settle the dispute over the vehicle damage was to give the plaintiff a misleading business card for a phantom legal department in Greenwich, where no telephone calls were accepted. The trial court further found that the defendant frequently used this card in order to shield itself from irate customers. The trial court properly concluded that both these actions by the defendant violated the provisions of CUTPA.

We turn next to the defendant's contention that the trial court abused its discretion in determining the amount of punitive damages awarded. A court may

exercise its discretion to award punitive damages to a party who has suffered any ascertainable loss pursuant to CUTPA. See General Statutes § 42-110g (a). "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987). Accordingly, when the trial court finds that the defendant has acted recklessly, "[a]warding punitive damages and attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Citations omitted.) Id. Further, "[i]t is not an abuse of discretion to award punitive damages based on a multiple of actual damages." *Staehle* v. *Michael's Garage, Inc.*, 35 Conn. App. 455, 463, 646 A.2d 888 (1994).

We conclude that the trial court did not abuse its discretion in awarding the plaintiff punitive damages equal to three times the amount of the unauthorized charges to the plaintiff's credit card. The trial court's findings that the defendant's conduct was "reprehensible," that its conduct of "bilking" its customers was not isolated and that this initial conduct of making unauthorized charges was "exacerbated" by the defendant's use of the phony business card constitute evidence of reckless indifference to and intentional and wanton violation of the plaintiff's rights.

The judgment is affirmed.

In this opinion the other justices concurred.